# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF TEXAS

# LUBBOCK DIVISION



JUN 30 2026 PM2:11
FILED - USDC - NDTX - LU

**MICHELE SEGURA**, Plaintiff,

v.

**ACCENTCARE, INC.**, Defendant.

5-26CV-138-H

Civil Action No. _____

# PLAINTIFF'S ORIGINAL COMPLAINT

(ADA, FMLA, FLSA)

Plaintiff Michele Segura ("Plaintiff"), proceeding pro se, files this Original Complaint against AccentCare, Inc. ("Defendant") and states as follows:

## I. INTRODUCTION

This action arises from Defendant's multi-year pattern of disability discrimination, retaliation, hostile work environment, harassment, wage violations, surveillance, evidence manipulation, and failure to accommodate Plaintiff's disability. Plaintiff endured escalating harm from 2024 through 2026, culminating in an emergency medical discharge on May 15, 2026 and a medically compelled resignation on May 18, 2026.

## II. PARTIES

1. Plaintiff Michele Segura is an individual residing in Lubbock, Texas.
2. Defendant AccentCare, Inc. is a corporation headquartered in Dallas, Texas.
3. Defendant's registered agent is CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201.

## III. JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. § 1331 because Plaintiff brings claims under the ADA, FMLA, and FLSA. Venue is proper because Plaintiff worked in this district, Defendant conducts business here, and the unlawful conduct occurred here.

## IV. FACTUAL BACKGROUND

## A. Employment and Performance

1. Plaintiff worked for Defendant as a non-exempt recruiter and consistently met performance expectations.
2. Plaintiff documented widespread unpaid off-the-clock labor among recruiters. Management acknowledged Plaintiff's unpaid work and promised back-pay but failed to provide it.

## B. TWCCRD/EEOC Charge and Procedural Irregularities

3. Prior to Defendant receiving notice of Plaintiff's TWCCRD/EEOC charge in January 2025, Plaintiff had no disciplinary write-ups, negative evaluations, or documented performance issues.
4. Plaintiff provided TWCCRD with witness information, but TWCCRD did not transmit Plaintiff's witness list to Defendant.
5. TWCCRD interviewed Plaintiff's witnesses only shortly before closing the investigation in February 2026. The closing statement omitted witness testimony and factual information Plaintiff submitted. Plaintiff filed written objections with TWCCRD leadership documenting these omissions.

## C. Retaliatory 2024 Evaluation Issued After Charge Notice

6. After Defendant received notice of Plaintiff's TWCCRD/EEOC charge in January 2025, Plaintiff received her 2024 performance evaluation.
7. Plaintiff's manager documented that Plaintiff produced **over 515 hires**, the highest in the department.
8. Despite this achievement, Plaintiff's manager assigned uniformly low evaluation scores inconsistent with her metrics.
9. During the Teams evaluation meeting, the Director questioned Plaintiff's metrics and stated they "would need to be reviewed."
10. Plaintiff documented the Director's statements in the employee comment section and reported the discrepancies to HR.
11. This evaluation was the first adverse action taken after Defendant received notice of Plaintiff's charge.

## D. Witness Retaliation, HR Breach, and Manager Promotion

12. In March 2025, another recruiter contacted Plaintiff and reported she had filed a complaint with HR regarding the same retaliatory conduct by the manager and was also experiencing retaliation.
13. This recruiter became a witness in Plaintiff's TWCCRD/EEOC case.
14. HR breached Plaintiff's confidentiality by discussing Plaintiff's case with this recruiter **off the clock**. Plaintiff reported this breach to the investigator.
15. In May 2025, Defendant announced that the manager who engaged in retaliatory conduct was being promoted and leaving the department. Plaintiff reported this to the investigator.

### E. Witness Termination During Active Investigation

16. In October 2025, during the active TWCCRD/EEOC investigation, Defendant terminated the recruiter who served as Plaintiff's witness.
17. Plaintiff documented that the termination occurred after the recruiter filed her own HR complaint and after she was identified as a witness.
18. Plaintiff notified the TWCCRD investigator immediately, reporting this as further evidence of Defendant's pattern of retaliation and witness intimidation.

### F. June 2025 Exploitation Attempt and SOP Manual Incident

19. In June 2025, the Director informed Plaintiff that he intended to have a colleague shadow Plaintiff and three other recruiters for purposes of creating the Texas Standard Operating Procedure Manual.
20. The colleague later notified Plaintiff that management was **only interested in Plaintiff's work**, not the work of the other recruiters.
21. The Director also instructed Plaintiff **not to share "everything"** with the colleague, despite stating the shadowing was based on Plaintiff's productivity and efficiency.
22. Plaintiff declined to participate and sent a written email to the Director, copying HR, stating that the request was exploitative and inappropriate.
23. Plaintiff documented that the request would have required her to provide uncompensated labor and train a colleague for advancement into a managerial role while Plaintiff herself was being denied advancement opportunities and experiencing ongoing retaliation.
24. Plaintiff did not allow the shadowing to occur, and the Texas Standard Operating Procedure Manual was never created.

### G. Hostile Work Environment and Operational Sabotage

25. Plaintiff documented nepotism involving the Texas Area Vice President, Recruitment Manager, and a related recruiter who influenced hiring, workload distribution, and retaliation.
26. During a Microsoft Teams meeting, the Director asked Plaintiff why she had not applied for the Team Lead position, stating that Plaintiff was highly intelligent. Plaintiff responded that she was not interested in the position. The Director then stated, 'Oh, I forgot — we would not have been able to offer it to you due to the write-up.' This statement demonstrated that the disciplinary write-up issued shortly after Defendant received notice of Plaintiff's TWCCRD/EEOC charge was used to block Plaintiff's advancement opportunities and had a direct, adverse impact on her employment. Plaintiff notified HR of this incident.
27. Plaintiff documented backdated emails, delayed email injections, altered metrics, and harassment during mandatory meetings.
28. Plaintiff documented that Defendant installed a **persistent remote-access monitoring tool** on Plaintiff's corporate workstation, enabling continuous surveillance of Plaintiff's computer activity without authorization. Plaintiff further documented attempts by Defendant's IT personnel to access her personal computer.
29. Plaintiff documented cross-state coordination to terminate a key EEOC witness.

## H. ADA Accommodation Denial After Final Write-Up

30. Approximately one week after Plaintiff received a final disciplinary write-up, Plaintiff participated in a Microsoft Teams meeting in January 2025 with the Director and the Vice President of PCS.
31. During this meeting, Plaintiff requested a transfer as an ADA accommodation due to ongoing retaliation, hostile treatment, and medical deterioration.
32. The Director and Vice President informed Plaintiff that there were no open positions available for transfer and stated that Plaintiff was "not always going to get what [she] wanted]."
33. They concluded by stating that Plaintiff "would be beneficial" on her manager's team.
34. Defendant's refusal to transfer Plaintiff, combined with dismissive and minimizing statements made shortly after issuing a final write-up, forced Plaintiff to remain under the same manager who was engaging in retaliatory conduct, exacerbating Plaintiff's medical condition and contributing to the hostile work environment.

## I. Failure to Accommodate and Medical Harm

35. Plaintiff repeatedly notified management of severe physical pain and chronic symptoms.
36. Defendant delayed Plaintiff's intermittent FMLA approval until mid-December 2024.
37. Non-disabled peers received ergonomic equipment immediately; Plaintiff's equipment was delayed until mid-June 2025.
38. Plaintiff documented Paradox AI overriding medically required breaks.
39. Plaintiff's medical providers documented a positive ANA autoimmune marker and ongoing evaluation for polymyositis.
40. Plaintiff's manageable anxiety escalated into Generalized Anxiety Disorder (GAD) due to Defendant's conduct.

## J. Emergency Medical Discharge and Constructive Resignation

41. On May 13, 2026, Plaintiff became medically unable to continue working.
42. On May 15, 2026, Plaintiff's physician issued an emergency medical discharge.
43. Plaintiff submitted documentation on May 18, 2026, the next business day.
44. Plaintiff's resignation was medically compelled and directly caused by Defendant's unlawful conduct.
45. On May 18, 2026, Plaintiff submitted a formal resignation email to Defendant's Human Resources Department, attaching her physician's emergency medical discharge directive issued on May 15, 2026. In her resignation email, Plaintiff explained that she was medically unable to continue working due to Defendant's ongoing retaliation, hostile work environment, and failure to accommodate her disability. Plaintiff's resignation email constitutes contemporaneous written evidence of constructive discharge and will be submitted as an exhibit.

## K. Post-Separation Retaliation and Financial Harm

46. Defendant falsely reported to TWC that Plaintiff "voluntarily quit" on May 12, 2026.

47. TWC issued a written determination finding Plaintiff quit for **good cause due to workplace harassment**.

48. Plaintiff withdrew funds from her 401(k) to pay medical bills caused by Defendant's conduct, incurring penalties and long-term financial harm.

## L. Attempted Private Resolution

49. Plaintiff notified Advent International of retaliation, wage theft, surveillance, evidence manipulation, and ADA confidentiality breaches.

50. Plaintiff offered a private resolution and submitted a global settlement valuation of $3,000,000. Defendant did not respond.

## V. CAUSES OF ACTION

1. Disability Discrimination (ADA)
2. Failure to Accommodate (ADA)
3. Retaliation (ADA & FMLA)
4. Hostile Work Environment (ADA)
5. Harassment (ADA)
6. FMLA Interference
7. FMLA Retaliation
8. Wage Violations (FLSA)
9. Constructive Discharge

## VI. DAMAGES

Plaintiff seeks all relief available under federal law, including:

- Back pay
- Unpaid overtime
- Front pay
- Compensatory damages
- Emotional distress
- Medical expenses
- Punitive damages
- Loss of benefits
- Tax penalties from forced 401(k) withdrawal
- Attorney's fees (if later represented)
- Any other relief the Court deems just

## VII. PRAYER FOR RELIEF

Plaintiff respectfully requests judgment in her favor and all relief available under the ADA, FMLA, and FLSA.

**Plaintiff further requests that Defendant reinforce, revise, or implement workplace policies and practices to ensure employees are protected from retaliation, excessive workload pressure, and fear of job loss when raising HR concerns, so that no other employees experience similar treatment.**

## VIII. JURY DEMAND

Plaintiff demands a trial by jury.

**Respectfully submitted,**

Michele Segura
Lubbock, Texas
Phone: 806-441-3365
Email: michelesegura82@gmail.com

Texas Physicians Group • 6102 82nd St., LUBBOCK TX 79424-0802

**SEGURA, Michele (id #118209, dob: 04/04/1982)**



**05/15/2026**

RE:

**Michele Segura**
Chart #:
DOB **04/04/1982**

To Whom ft May Concern:

The above patient, Michele Segura has been under my direct medical care, actively greater than ten years.
Over this multi-year period of treatment, the patient has been subjected to severe, unremedied hostile work environment
characterized by professional isolation and targeted harassment. The employer's continuous failure to implement required
medical accommodations and transfer requests has caused a critical, measurable deterioration of the patient's physical
and mental health.

Specifically, due to the prolonged stress of this work environment, the patient has suffered involuntary, medical dangerous
40-pound weight loss and newly developed objected biomarkers of systemic immune dysfunction. Due to the acute,
progressive nature of this physiological decline, the patient has developed chronic physical flare ups and has been formally
referred to an outside medical specialist for urgent diagnostic evaluation and long term clinical management of suspected
chronic systemic condition.

It is my clinical opinion that this is physical and immunological decline is directly caused and exacerbated by the chronic
workplace trauma, and this impairment is expected to persist indefinitely. Continued exposure to this specific environment
constitutes an immediate severe threat to the patient's safety. Because the workplace environment remains
unremedied and detrimental to her health, I have medically ordered Michele Segura that immediate termination of her
employment is a binding medical necessity.

The patent remains mentally and physically able, available, and me4dically cleared to seek and accept full time employment
in an alternative, non-hostile work environment.

Sincerely,

**Electronically Signed by: JOHNNY TURNER, PA**

**05/15/2026 11:56 AM**

UI Support & Customer Service
TEXAS WORKFORCE COMMISSION
PO BOX 370040
EL PASO TX 79937-0040

# DETERMINATION ON PAYMENT OF UNEMPLOYMENT BENEFITS
### Date Mailed:  June 10, 2026

MICHELE L SEGURA
6003 73RD ST
LUBBOCK TX 79424-1905

Social Security Number: XXX-XX-5612
Employer: ACCENTCARE INC
As:
Employer Account No:  13-072677-1
All dates are shown in
month-day-year order.

## Decision

**Issue:** Separation from Work-Harassment
**Decision:** We can pay you benefits, if you meet all other weekly requirements such as being able, available, and actively searching for work.
**Reason for Decision:** Our investigation found you quit your last work because of harassment on the job. You tried all reasonable means for correcting the problem before you quit. Your reason for quitting is considered good cause connected with the work.
**Law Reference:** Section 207.045 of the Texas Unemployment Compensation Act.

### Understanding your Decision

If you receive a decision that says, "we cannot pay you benefits," it means there is a problem with your claim EVEN IF you have received other decisions for the same period that say, "we can pay you benefits." If even one decision for the same period says we cannot pay, you will not receive an unemployment payment for that period.
**To resolve issues on decisions you receive:**
1. Follow instructions on the notice(s); call the Tele-Center at 800-939-6631 if you have questions;
2. If the instructions tell you to "Report," call the Tele-Center at once;
3. If you disagree with a decision, file an appeal. Appeal each decision separately by the appeal deadline. If you fax your appeal, keep a confirmation sheet.
Your employer can appeal TWC's decision to pay benefits.  TWC will notify you of any appeal hearing.  If you do not participate, you may lose your benefits and have to repay benefits you received.

## Determination of Potential Chargeback for the Employer

We will charge your former employer's account if we pay you benefits.

## If You Disagree with this Decision

If you disagree with this decision, you may appeal.  Submit your appeal by mail, fax, online, or in person at any Texas Workforce Solutions office, on or before  06-24-26  .
TWC will use the postmark date, or the date we receive the fax or online form, to determine whether you submitted your appeal on time.  If you appeal by fax, you should keep your fax confirmation as proof you sent it.  Please include a copy of this determination notice with your appeals correspondence.
If you receive multiple determination notices, you must appeal each determination separately.

Mail the appeal to:

You may appeal by submitting TWC's online  appeal form. Go to www.texasworkforce.org/uiappeal

Appeal Tribunal
Texas Workforce Commission
101 E. 15th Street
Austin, TX 78778-0002
Or fax to (512) 475-1135

| Case No.:    4 |
| Claim ID.:    05-17-26 |
| Claim Date:    05-17-26 |
| HEARING IMPAIRED CLIENTS CALL 711 for RELAY TEXAS |

**Please See Reverse For How To File An Appeal.**

BD300E 02/28/2018

## How to Request an Appeal

**Submit your appeal by mail, fax, in person at any Texas Workforce Solutions office, or online at** www.texasworkforce.org/uiappeal. Mail or fax your signed letter to the TWC Appeals Department at the address or fax number on the front of this form. You must submit your appeal within **14 calendar days of the date we mailed you this** letter. The deadline is on the front of this form.

> **You MUST request payment** every two weeks, unless you return to full-time work. If the appeal is in your favor, we can pay you **only** for the weeks you requested payment and met all other eligibility requirements.

— If you **mail** your appeal, it must be **postmarked** on or before the deadline.
— If you submit your appeal online or by fax, TWC must **receive** it on or before the deadline. Print and keep the confirmation page as proof you sent it.

**Include in your appeal letter:**

— Your name, address, Social Security number (SSN).
— The date TWC mailed you the decision you want to appeal.
— Your request for translators, if needed, and the language you require.
— Your request for special services, if needed, such as an interpreter for the hearing-impaired.

**IMPORTANT:** If you miss the appeal deadline, your appeal letter **must** explain in detail why you submitted it late. If TWC decides **not** to hear the case because you appealed late, we will mail you a decision that you may appeal.

## Appeal Tribunal Hearing

The first appeal level is a telephone hearing with the Appeal Tribunal (AT). The AT hearing consists of oral statements given under oath. **Legal representation is optional** - someone can represent you, but TWC does not provide representation. **You may call witnesses.** Your employer may also appeal and participate in your hearing.

**Keep your mailing address current.** We will **mail** you the AT decision. It is important that you **participate in the AT hearing** because the hearing officer makes the decision solely on the testimony given at the hearing. If you cannot participate at the scheduled time, call the hearing officer at the number listed on the hearing notice.

To prepare for your hearing, see **How to Appeal a Decision** at www.texasworkforce.org/uiappeal.

**Date and Time.** We will mail you and the employer a hearing notice packet with the date and time of your hearing. It will include instructions on submitting additional documents you want to present at the hearing. You must mail or fax copies of the additional documents to the employer and TWC **immediately** after receiving the hearing packet.

## Additional Appeals

If you disagree with the AT decision, you may submit a **Commission Appeal (CA)**. The Commission will rule on your case after reviewing the AT decision and listening to the recorded hearing. If you disagree with the CA decision, you may request a **Motion for Rehearing (MR)** within 14 calendar days of the mailing date of the CA decision. TWC will grant the MR if you can show **all** of these:

— important new information about your case;
— why the information could change the decision; and
— a compelling reason why you did not present the information earlier.

You may also appeal the CA decision to a **civil court** between 15 and 28 days after the date we mailed you the CA decision. You must complete an AT hearing and CA appeal before appealing to a civil court.

## For More Information

Go to ui.texasworkforce.org and select **Appeal Status** to view your appeal status, actions taken, appeal history, and more. Read more about **How to appeal a decision** at www.texasworkforce.org/unemploymentbenefits. Access the Internet for free at public libraries and Texas Workforce Solutions offices.

BD300F  03/02/2018

**accentCare.**
Reimagining Care, Together.

## CORRECTIVE ACTION

| EMPLOYEE NAME | HIRE DATE | JOB TITLE | LOCATION | MANAGER NAME |
|---|---|---|---|---|
| Michele Segura | 02/07/2022 | Recruiter | Remote | Jessica McCraw |

| NOTICE TYPE | REASON | DATE TO BE ISSUED |
|---|---|---|
| Final Corrective Action | Behavior/Conduct | 1/23/2025 |

### INCIDENT DESCRIPTION AND SUPPORTING DETAILS

It is consistent with a supervisors' responsibility to ensure staff oversight, and this involves clarifying expectations and bringing matters to their attention as needed. This corrective action is being issued because of non-compliance with company policies, specifically performing work off the clock and outside of scheduled hours.

11/18 Justin Lovins, Director of recruiting reached out to you regarding work being done after hours, at that time he explained that work should not be done off the clock. On 12/6 you were again requested not to work off the clock by both Jessica McCraw and Justin Lovins, at that time you were directed not to work off the clock.

- Since these conversations it has been noted that work was conducted off the clock during 20+ separate occasions between 12/7/2024- 1/22/2025. Please review attached document that outlines daily detail.

The previous conversations were had to end the above behavior. Unfortunately, that has not been successful leading to this **Final** Corrective Action is being issued for your unsatisfactory job performance, specifically due to working off of the clock after multiple requests not to do so.

**Your conduct is not in line with AccentCare's policies for the following reasons: ACHR. HR-34, Standards of Conduct and Acceptable Workplace Behaviors.**

### CORRECTIVE ACTION EXPECTATIONS AND REQUIREMENTS

- It is expected that you arrive to work on time and complete your assigned shift, and do not work outside of assigned hours.
- Any overtime must be cleared with your manager prior to worked.
- You will be required to follow policies, procedures, protocols and practices at all times.

Corrective Action Form rev. 07/2024

- You will be expected to perform your job duties satisfactorily at or above expectations in your role.
- Company systems should only be accessed during scheduled hours and while on the clock.  This includes:
    - checking ICIMS, updating applicant profiles, emailing applicants...etc,
    - sending and responding to emails

## CORRECTIVE ACTION TERMS

The above referenced policy(s), expectations, and requirements must always be adhered to. Failure to demonstrate **immediate and sustained improvement** may result in further corrective action, up to and including separation of employment. Employee may not be eligible for transfer, merit increases, or bonuses until performance has improved.

## EMPLOYEE COMMENTS

_1/23/25- I have stated on several occasions that I needed assistance due the unmanageable workload I was given. Company knew I was working off the clock to complete my tasks to ensure my workload was caught up. I have worked consistently off the clock since I've started working under Jessica and this was never an issue prior until I had to ask for accommodations that led to filing a complaint within the company in Aug/2024.
As stated during the meeting, since this ordeal has started, I have been punished by AccentCare. I do not agree with this write up and this company has caused so much more mental and emotional stress upon me instead of assisting me when I was needing it.

Since it was stated by during the meeting and its evident reports can be pulled, I would like for AccentCare to follow through on your work and back pay me for all the time I worked off the clock to ensure my workload stayed caught up, clients' and hiring managers needs were met, and to ensure that the projects I was given were able to be completed as well. This would go back to 2022. I know you all asked for me to provide the dates/times, but given I do not have the time during my working schedule and reports can be pulled, it would be sufficient that way. Thank you.

## ACKNOWLEDGEMENT AND SIGNATURE

I, the undersigned, acknowledge that this information outlined herein has been discussed with me.

Corrective Action Form rev. 07/2024

| EMPLOYEE NAME (PRINT) | EMPLOYEE SIGNATURE | DATE RECEIVED |
|---|---|---|
| M.Segura | Michele Segura | 1/31/23 |

| MANAGER NAME (PRINT) | MANAGER SIGNATURE | DATE |
|---|---|---|
| Jessica McCraw | *Jessica McCraw* | 2/3/25 |

*This notice does not create any contractual rights or alter the employee's status as an at-will employee.*

**TO BE RETAINED IN EMPLOYEE'S PERSONAL DOCUMENTS IN WORKDAY**
**COPY TO EMPLOYEE**

Corrective Action Form rev. 07/2024

Docusign Envelope ID: 101632F9-F79A-4451-B799-A372FC4308C4

# Texas Workforce Commission
A Member of Texas Workforce Solutions

**Bryan Daniel, Chairman**
Commissioner Representing the Public

**Alberto Treviño, III**
Commissioner Representing Labor

**Joe Esparza**
Commissioner Representing Employers

**Edward Serna**
Executive Director

Wed Jan 15 00:00:00 EST 2025

## CHARGING PARTY NOTIFICATION OF CHARGE OF DISCRIMINATION

*SENT VIA DOCUSIGN*: plumpudding82@gmail.com

Michele Segura
6003 73rd Street
Lubbock, TX 79424
c/o

TWCCRD: 1A25310                    EEOC: 31C-2025-00304
RE: Michele Segura v AccentCare

Dear Michele Segura,

Please be advised that the Texas Workforce Commission Civil Rights Division (TWCCRD) has accepted your Charge of Discrimination. Enclosed is a copy of your Charge of Discrimination.

If you are represented by legal counsel, a letter of representation is required. Please include the legal counsel's name address, e-mail address and telephone number. Upon receipt of this statement, all further communication is forwarded to your legal counsel.

Sincerely,

Robert Gonzalez
TWCCRD Employment Manager

Enclosures:      Copy of Charge of Discrimination

**Notice Against Retaliation**
Pursuant to Section 21.055 of the Texas Labor Code, it is an unlawful employment practice to retaliate or discriminate against a person who has opposed a discriminatory practice or who has made or filed a complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Chapter 21 of the Texas Labor Code.

101 E. 15th Street, Room 154 • Austin, Texas 78778-0001 • (512) 463-2642 (T) • (512) 463-2643 (F) • Relay Texas: 800-735-2989 (TDD) 800-735-2988 (Voice) • www.twc.texas.gov
Equal Opportunity Employer / Program
Auxiliary aids and services are available upon request to individuals with disabilities
TEXAS
WORKFORCE SOLUTIONS

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Antonio Direct Dial: (210) 640-7530
FAX (210) 281-2522
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued on: April 2, 2026

**To:**  Michele Segura
6003 73rd Street
Lubbock, TX 79424

**Re:**  Michele Segura v. AccentCare

EEOC Charge Number:  31C-2025-00304

EEOC Representative and email:    Hector Colon-Padro
State, Local and Tribal Program Manager
hector.colon-padro@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the determination that substantial weight has been accorded to the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is the official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) received this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) Please retain this notice for your records.

On behalf of the Commission:

For

HECTOR COLON-PADRO    Digitally signed by HECTOR COLON-PADRO
Date: 2026.04.02 12:04:34 -05'00'

Norma J. Guzman
Field Director

cc:    Dana Perminas
Accentcare
17855 N Dallas Pkwy
Dallas, TX 75287

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

Michele Segura
Plaintiff

5-26CV-138-H
CASE NUMBER

v.

AccentCare, Inc.
Defendant

Date   6·30·26

Attorney/Pro Se Litigant Signature _____

Print Name   Michele Segura

Address   6003-73rd Street

City, State, Zip   Lubbock, Tx 79424

Telephone   806·441-3365

Case 5:26-cv-00138-H-BV Document 1 Filed 06/30/26 Page 16 of 16 PageID 16

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Michele Segura
Lubbock County

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se
6003 73rd Street
Lubbock, Tx 79424

## DEFENDANTS

AccentCare, Inc.
Dallas County

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Marc Bonora
17855 North Dallas Parkway Ste.200
Dallas, Tx 75287

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument |    Liability    ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel &    Pharmaceutical Slander    Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability    ☐ 368 Asbestos Personal ☐ 340 Marine    Injury Product ☐ 345 Marine Product    Liability | | ☐ 835 Patent - Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits |    Liability    **PERSONAL PROPERTY** ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract |    Product Liability    ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise |    Injury    ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | Exchange |
| | ☐ 362 Personal Injury -    Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| |    Medical Malpractice | Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights    **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/    Sentence Accommodations    ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | Employment    **Other:** ☐ 446 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | **IMMIGRATION** | | |
| | Other    ☐ 550 Civil Rights ☐ 448 Education    ☐ 555 Prison Condition | ☐ 462 Naturalization Application ☐ 465 Other Immigration Actions | | |
| |    ☐ 560 Civil Detainee -    Conditions of    Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court |
| ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened |
| ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C 12101 et seq.; 29 U.S.C 2601; 29 U.S.C 201

Brief description of cause:
ADA disability discrimination, failure to accommodate, retaliation; FMLA interference/retaliation; FLSA unpaid overtime.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
Exceeds $300,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD
Michele Segura, Pro Se

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____